## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| Leland Mongold & LaDonna Mongold, | ) | |
| On Behalf of Themselves and All Others | ) | **Case No.** |
| Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | **And** |
| | ) | **JURY DEMAND** |
| Universal Nationwide, L.L.C., d/b/a | ) | |
| Universal Debt Reduction, L.L.C., | ) | **(Class Action)** |
| Nationwide Asset Services, Inc., and | ) | |
| John Does 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

COME NOW, the plaintiffs, Leland Mongold & LaDonna Mongold, by and through their attorneys, with their Complaint in this matter.  Plaintiffs allege and state that this is a class action brought by consumers as the class representatives on behalf of themselves and all others similarly situated.  This matter is brought pursuant to the federal RICO statute, 18 U.S.C. § 1961 et seq., the federal Credit Repair Organization Act, 15 U.S.C. § 1679 et seq. (Hereinafter the "CROA"), the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (Hereinafter the "FDCPA"), the Nebraska Consumer Protection Act (Hereinafter the "NCPA"), Neb. Rev. Stat. § 59-1601 et seq., and the Nebraska Deceptive Trade Practices Act (Hereinafter the "NDTPA"), Neb. Rev. Stat. § 87-301 et seq. to redress the false and misleading representations made and the deceptive practices conducted by the defendants, including the unauthorized practice of law, in connection with its debt relief plan advertised and sold to consumers in the state of Nebraska.  The plaintiffs seek certification of a class, an award of statutory damages,

1

actual damages, injunctive and declaratory relief because the defendants' practices are

unlawful under RICO, the CROA, the FDCPA, the NCPA, and the NDTPA.  In support

of these claims, the plaintiffs state and allege as follows:


## JURISDICTION AND PARTIES

1.  That the subject matter jurisdiction of this Court arises under 18 U.S.C. § 1964,

15 U.S.C. § 1679 et seq., and 15 U.S.C. § 1692k, actionable through 28 U.S.C. § 1331

and other provisions of the law.

2.  That pursuant to 18 U.S.C. § 1965(a) venue is proper in this Court for the

reason that the claims on which the transactions took place happened in the state of

Nebraska in this judicial district.

3.  That at all times relevant hereto, the plaintiffs are residents of Omaha, Douglas

County, Nebraska, in this judicial district.

4.  That defendant Universal Nationwide, L.L.C., d/b/a Universal Debt Reduction,

is a corporation organized and existing under the laws of the state of California and is

doing business in the state of Nebraska, and elsewhere.

5.  That defendant Nationwide Asset Services, Inc. is a corporation organized and

existing under the laws of the state of California and is doing business in the state of

Nebraska, and elsewhere.

6.  That the defendants now only known as John Does 1-10 are the

owners/operators/managers of the defendant corporations and are personally responsible

for the acts of the enterprise and their employees pursuant to 18 U.S.C. §1962(c).

2

7.  That John Does 1-10 participate directly in the conduct of the activities of Universal Nationwide, L.L.C. and Nationwide Asset Services, Inc. as related to the issues raised by the plaintiffs and the classes herein.

8.  That Universal Nationwide, L.L.C. and Nationwide Asset Services, Inc. in combination and association are an enterprise that purportedly assists consumers to eliminate their debts through a program attempting to negotiate reduced payments of the debts, as well as actually collecting money from consumers, such as the plaintiffs and class members, and later make payments directly to creditors for a fee.

9.  That all defendants' participation is through the same pattern of racketeering activity described below.

10.  Defendants are all entities or individuals who contributed to or participated in, or authorized, and/or implemented the policies regarding the acts complained of or conspired with the named defendants to commit the acts complained of which caused injuries to the plaintiffs and the class.  Each defendant acted as principal and agent, each of the other, and combined and concurred each with the others in committing the acts complained of herein.

11.  Plaintiffs allege that at all times relevant herein, each of the defendants were, and are now, the agent, servant, employee, and/or other representative of the other defendants, and in doing the things herein alleged, were acting within the scope, purpose and authority of such agency, service, employment and/or other representative capacity with the permission, knowledge, consent and ratification of the other defendants.  Any

reference hereinafter to "Defendants," without further qualification, is meant by the plaintiffs to refer to each defendant named above.

## FACTUAL BACKGROUND

12. Defendants, Nationwide Asset Services, Inc., also known as Nationwide Asset Services ("NAS") and Universal Nationwide, L.L.C., d/b/a Universal Debt Reduction ("UDR"), represented themselves to be "credit counseling and debt settlement companies" and via, the Internet, and other advertising media solicited funds from Nebraska residents with the promise to offer them relief from harassment from creditors or bill collectors and to improve the consumers' finances and credit by means of debt management services. Defendants were paid various fees for their services of obtaining funds from consumers to be disbursed later to the consumers' creditors. Attached respectively hereto as Exhibits "A" & "B" are copies of the defendants' "Application" and "How to Deal with Contact From a Creditor" provided as a standard practice to the defendants' Nebraska clients.

13. That the defendants charged and were paid fees before any services were provided, and specifically before services involving the saving or rebuilding the plaintiffs' credit were performed.

14. That the defendants failed to provide consumers with disclosures required by law regarding the credit repair services at issue in this lawsuit.

15. That the defendants solicited payments from the plaintiffs over the telephone

and through the mail delivered by the United States Postal Service for the alleged services.

16.  Defendants advertised the purported "debt negotiation services" on the Internet and elsewhere in Nebraska. Defendants solicited Nebraska residents via a Web site stating its home office is in Sacramento, California, and its telephone number is (916) 779-3700.  Defendants' Web site states that consumers can contact defendants by sending an e-mail via the Web site or by using their toll-free telephone number (888) 839-2930.

17.  In their promotional materials "UDR" and "NAS" as well as John Does 1-10 claimed that by following the "debt negotiation" program that the plaintiffs and the class would be debt free in  three years or less.

18.  During all relevant times, defendants maintain systematic, continuous and substantial contacts with Nebraska consumers by their use of the United States mail, telephone, e-mail, and their use of public advertisements and interactive Web sites.

19. Defendants represent to Nebraska residents that: (a) defendants' program is the most effective program available in relieving the overwhelming burden of debt, (b) that on average, defendants' clients are saving 25-40% of the debt they owe, (c) that program participants are able to be out of debt within two to four years, and (d) that defendants' clients avoid years of accrued interest, late fees, and other costs that would otherwise be paid in the twenty-plus years of struggling under their current debt load.

20.  Defendants received funds from Nebraska residents that were to be paid to the consumers' creditors.  These consumer funds were deposited into a bank account totally controlled by the defendants.  In exchange for the defendants' services, consumers paid defendants a "set up" fee of $299.00.  The plaintiffs' first three monthly payments of $715.00 each were retained by the defendants as "enrollment/counseling fees."  Consumers were charged additional amounts on a monthly basis.  In the event a consumer was successful in obtaining a reduction of a debt made part of the "program" the defendants would also retain funds from the consumers amounting to at least 25% of the settlement savings as a "negotiation fee."  Defendants charged a variety of fees, including: "set up fees," "enrollment fees," "retainer fees," "monthly administrative fees," "maintenance fees," "ACH electronic check fees," and "cancellation" and "termination fees."

21.  As noted above, the defendants charged a fee of 25% of any savings obtained for their clients when a settlement is reach with any creditor.  Further, defendants claimed this 25% on debts that were never paid as part of the defendants' program.

22.  Defendants consistently collected an up-front "set up," "enrollment," or "negotiation" fee before ever performing a single service on behalf of the consumers.  Plaintiffs paid the defendants $2,444.00 prior to any services being provided.

23.  That the defendants, as a part of their standard practice, obtain a "Limited Power of Attorney" in order to act on behalf of consumers including the plaintiffs.

24.  That the plaintiffs were lead to believe by the defendants that because they

6

provided the defendants a "Limited Power or Attorney" to act on their behalf that the

defendants were actively working with the plaintiffs' creditors to eliminate the plaintiffs'

debts.

25. Defendants universally failed to provide Nebraska residents a proper accounting

of the funds paid the defendants.

26. That the defendants demanded that the plaintiff make monthly payments of

$715.00 to the defendants, and advised the plaintiffs to ignore their creditors and make

payments only to the defendants.

27. That on or about June 27, 2008, plaintiff LaDonna Mongold was sued on an

account that the defendants had promoted to the plaintiffs as scheduled for settlement.

28. LaDonna Mongold was compelled to hire an attorney to defend the collection

action against her and paid legal fees of $90.00 to respond to the collection action brought

against her.

29. Defendants informed and promised that the plaintiffs' fees paid to the

defendants would be held in an insured account in stating that, "an FDIC insured bank

account will be established at a major financial institution into which the regular monthly

will be deposited." However, defendants failed to do so, and the plaintiffs' funds were

not deposited into a FDIC insured bank account.

30.  Defendants are not a law firm and do not employ lawyers, but they have consistently given the plaintiffs and members of the class legal advice regarding debt, debt management, and collection lawsuits.

31.  Defendants made claims to the plaintiffs and members of the class that by following the defendants' program their credit would be improved.  However, this statement is and was false.

32.  Defendants discourage as a standard practice clients such as the plaintiff from attempting to settle with creditors on their own.

33.  Defendants advised the plaintiffs and members of the class that, "Please **be relaxed.**  These **creditors can't hurt you.**  They may report late payments to the credit bureau - that's okay.  They may [sic] "write off your account or sell it to a collection agency - that's okay.  All those actions are part of the expected process and will create the environment in the best settlements can be negotiated."

34.  That because the plaintiffs ignored contacts from creditors on the advice of the defendants, creditors placed the plaintiffs' accounts with collection agencies that would otherwise not have been turned over for collection.

35.  That by advising its clients to pay "UDR" and "NAS" and not pay their original creditors, clients such as the plaintiffs are turned over to collection agencies when

otherwise the accounts would not have been turned over for collection if the defendants'

clients paid their creditors instead of the defendants.

36. Defendants mislead the plaintiffs in stating, "[w]ithin a year of completing our

program, your credit should be largely restored."  "In addition, your credit rating is

enhanced by the elimination of your unsecured debt, because it drastically lowers your

back-end debt ratios.  That fact alone may allow you to qualify for a larger mortgage or a

better car than you [sic] might"

37. Defendants insisted on taking a fee under the agreement with the plaintiffs on an

account that was never paid or negotiated upon by the defendants, this practice is

routinely part of the defendants' scheme to take advantage of Nebraska residents who

have enrolled in defendants' program.

## CLASS ALLEGATIONS

38.  Plaintiffs bring this class action on behalf of themselves and four (4) subclasses

of consumers designated pursuant to Fed.R.Civ.P. 23.

39.  Subclass "A" consists of (1) all persons, (2) who are residents of the state of

Nebraska, (3) who participated in the defendants' program or paid any amount for the

"debt negotiation services" solicited by the defendants, (4) within the five-year period

prior to the filing of this Complaint, for the defendants' violations of the federal RICO

statute.

40. Subclass "B" consists of (1) all persons, (2) who are residents of the state of Nebraska, (3) who participated in the defendants' program or paid any amount for the "debt negotiation services" solicited by the defendants, (4) within the five-year period prior to the filing of this Complaint, for the defendants' violations of the federal CROA statute.

41. Subclass "C" consists of (1) all persons, (2) who are residents of the state of Nebraska, (3) who participated in the defendants' program or paid any amount for the "debt negotiation services" solicited by the defendants, (4) within the one-year period prior to the filing of this Complaint, for the defendants' violations of the federal FDCPA statute.

42. Subclass "D" consists of (1) all persons, (2) who are residents of the state of Nebraska, (3) who participated in the defendants' program or paid any amount for the "debt negotiation services" solicited by the defendants, (4) within the four-year period prior to the filing of this Complaint, for the defendants' violations of Nebraska consumer protection statutes, namely the NCPA and the NDTPA.

43. The class is believed to be so numerous that joinder of all members is impractical.  The Complaint concerns a routine and ongoing practice of defrauding clients

of the defendants

44.  There are questions of law and fact in common to the classes, which common issues predominate over any issues involving only individual class members.  The fact common to each class member is the charging of hidden and excessive fees for the "debt negotiation" program described by the defendants, which is touted to make the client debt free in less than three (3) years. The defendants' activities violate the federal RICO, CROA, and FDCPA statutes as well as the NDTPA, and the NCPA.

45.  The plaintiffs' claims are typical of the class members.  All claims are based on the same facts and legal theories.  The amounts at issue are generally less than $10,000.00 and thus a consumer class action is a particularly well-suited vehicle for recovery of these charges.

46.  The plaintiffs will fairly and adequately protect the interests of the class.  Plaintiffs have retained counsel experienced in handling actions involving unlawful practices under consumer statutes and class actions.  Neither the plaintiffs nor their counsel have any interests which might cause them to not vigorously purse this action.

47.  Certification of the class under Fed. R. Civ. P. 23 is appropriate in that:

A.  The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

11

B. A class action is superior to other available methods for the fair and efficient

adjudication of this controversy.

48. The interest of class members in individually controlling the prosecution of

separate claims against the defendants is small because the actual damages are generally

less than $10,000.00 per consumer.

49.  Certification of a class under Rule 23 is also appropriate in that the defendants

acted on grounds generally applicable to the class thereby making injunctive and

declaratory relief appropriate with respect to the class as a whole.

50.  Management of this class action is not likely to present significant difficulties.

51.  Plaintiffs request certification of a hybrid class combining monetary damages

and equitable relief.

## <u>CAUSE OF ACTION NO. 1</u>

## <u>VIOLATIONS OF 18 U.S.C. § 1962 - RICO</u>

COME NOW the plaintiffs and the class, and for the First Cause of Action against

the defendants state and allege as follows:

52.  That defendant Universal Nationwide, L.L.C., d/b/a Universal Debt

Reduction, LLC - "UDR" - is a distinct enterprise as defined in 18 U.S.C.§1691(4).

53.  That defendant Nationwide Asset Services, Inc., "NAS" is a distinct enterprise

as defined in 18 U.S.C.§1691(4).

54.  That defendants John Does 1-10 are personally engaged in the operations of "UDR and "NAS" the defendant corporations.

55.  That defendants have engaged in a pattern of racketeering activities over the last nine (9) years in violation of 18 U.S.C. §1962(a).  The predicate offenses committed by the defendants include mail fraud under 18 U.S.C. §1341 and wire fraud pursuant to 18 U.S.C. §1643.

56.  That defendants have used the mail to assist the activity of deceiving clients such as the plaintiffs herein.  The defendants have committed mail fraud in their activity to induce clients such as the plaintiff herein to participate in the enterprise's "debt negotiation services " program.

57.  The plaintiffs received the written hard copy "application" to participate in defendants' program via the regular United States Postal Service. The plaintiffs returned the hard copy of the application via the United States Mail and via facsimile transmission over telephone lines.

58.  The defendants have committed wire fraud in contacting the plaintiffs via telephone, by e-mail, and by the use of wire transfers in taking $715.00 on at least thirty (30) separate occasions from the plaintiffs' bank account as described in paragraph twenty (20) above.

59.  That defendants' racketeering activities to recruit and enlist clients such as the plaintiffs through the use of the United States Mail is an element of a scheme to defraud

consumers such at the plaintiffs as they are desperate to improve their financial standing.

60.  That defendants' racketeering activities to recruit and enlist clients such as the plaintiffs through the use of the Web sites and the Internet is an element of a scheme to defraud consumers such at the plaintiffs as they are desperate to improve their financial standing.

61.  That defendants' racketeering activities to solicit clients such as the plaintiffs and to obtain access to the clients' bank account for the purpose of withdrawing funds electronically is an element of the scheme to defraud clients such as the plaintiffs.

62. That the defendant corporations are liable for the actions of their officers, agents, and employees under the principle of respondeat superior, because the individuals took the alleged actions on behalf of the defendants.

63. That the defendants benefitted directly from the actions taken by its officers, agents, and employees as it accepted the payments from the plaintiffs and members of the class.

64.  That the enterprises known as Universal Nationwide, L.L.C., d/b/a Universal Debt Reduction, L.L.C. and Nationwide Asset Services, Inc. are engaged in activities which impact or effect interstate commerce.

65.  That as a standard practice the defendants made the following misrepresentations to the plaintiffs and the class:

14

A. That as a standard practice defendants sent the plaintiffs,  via the United States Mail, from their offices in Sacramento, California, to their home in Omaha, Nebraska, information and literature claiming that the plaintiffs would be debt free in three (3) years or less if he simply followed the defendants' program.  The consequences of these misrepresentations are that the plaintiffs paid the defendants $30,217.76 and were not in fact debt free after completing the defendants' program.

B.  That as a standard practice defendants sent the plaintiffs information and literature from their offices in Sacramento, California, to their home in Omaha, Nebraska, regarding legal issues including information on what should be done in the event he was served with a summons and lawsuit. (See Exhibit A)  The information misrepresented the significance of being sued and as a result of the misrepresentations made by the defendants a county court collection action was filed against plaintiff LaDonna Mongold.

C.  That as a standard practice defendants sent literature and information to the plaintiffs from their offices in Sacramento, California, to their home in Omaha, Nebraska, via the United States Mail, and in discussions over the telephone from their home in Omaha, Nebraska, to the defendants at their offices in Sacramento, California concerning whether the plaintiffs should continue to pay their creditors directly. (See Exhibit B)  As a consequence of the misrepresentations made by the defendants - the plaintiffs did not pay their creditors, and as a direct result interest and fees were added to the original debt amount by the creditors.

15

D.  That as a standard practice DRA committed wire fraud in transferring funds

directly from the plaintiffs' bank account.  Defendants made misrepresentations

regarding the success and results achieved by those participating in its "debt

negotiation services" program inducing the plaintiffs to participate.  The

consequences of the misrepresentations and participation are detailed in items A,

B, & C above.

66.  That the mail fraud and wire fraud detailed in paragraph sixty five (65) above

are elements of the scheme to defraud the plaintiffs and other persons, and were made for

the purpose of executing the scheme.

WHEREFORE, plaintiffs pray for a judgement against the defendants for actual

damages, for prejudgement interest from the date of filing this lawsuit, for statutory

attorney fees in a reasonable amount and a statutory award of treble damages pursuant to

18 U.S.C. § 1965(c), and for the costs of this action.  Plaintiffs further pray for an order of

this court enjoining the defendants from the activities alleged in this lawsuit, and for

further relief as the Court shall deem appropriate.

## CAUSE OF ACTION NO. 2

### Violations of 15 U.S.C. § 1679 et seq.

### Credit Repair Organizations Act

67.  The plaintiffs reassert all of the allegations stated above as if fully stated here.

16

68.   That the plaintiffs are consumers as defined in 15 U.S.C. § 1679a(1).

69.   That the defendants are credit repair organizations as defined in 15 U.S.C. § 1679a(3).

70.   That the defendants made untrue or misleading representation of the services of the credit repair organization in violation of 15 U.S.C. § 1679b(a)(3).

71.   That the defendants engaged in acts and practices that deceived the plaintiffs and members of the class in violation of 15 U.S.C. § 1679a(4).

72.   That the defendants received payment in advance for services that were not fully performed in violation of 15 U.S.C. § 1679b(b).

73.   That the defendants failed to provide the plaintiffs and members of the class with disclosures in violation of 15 U.S.C. § 1679c(a).

74.   That the plaintiff and members of the class have been harmed and suffered damages as a result of the defendants' actions.

WHEREFORE, the plaintiffs and the class they seek to represent pray of an order of this court certifying the class and judgment for the following damages:

a.   Actual damages pursuant to 15 U.S.C. § 1679g(a)(1).

b.   Punitive damages pursuant to 15 U.S.C. § 1679g(2)(B).

c.   Attorneys' fees and costs pursuant to 15 U.S.C. § 1679g(3).

17

## CAUSE OF ACTION NO. 3

## Violations of 15 U.S.C. § 1692 et seq.

## Fair Debt Collection Practices Act

75.  The plaintiffs reassert all of the allegations stated above as if fully stated here.

76.  That the plaintiffs and the class they seek to represent are natural persons and "consumers" within the meaning of the Fair Debt Collection Practices Act, 15 U.S.C.§1692a(3).

77.  That the defendants are engaged in the business of collecting debts and regularly attempt to collect debts alleged to be due another by use of the mail and telephone and as such are debt collectors within the meaning of 15 U.S.C. §1692a(6).

78.  That all times relevant hereto the debts of the plaintiffs and class members are for personal, family or household purposes alleged to be in default.

79.  That the defendants violated the FDCPA in the following particulars:

A) By making a false representation of the services rendered or compensation which may be lawfully received by the defendants for the collection of debts owed another in violation of 15 U.S.C. § 1692e(2)(B).

B) By making false, deceptive misleading representations in connection with the collection of the debt in violation of 15 U.S.C. §1692e;

C) By giving a false representation of the character, amount, or legal status of the debt in violation of 15 U.S.C. §1692e(2)(A);

D) By attempting to collect an amount which is not legally owed, and to take any action that cannot be legally taken in violation of 15 U.S.C. § 1692e;

E) By the use of false representation or deceptive means to attempt to collect a debt in violation of 15 U.S.C. § 1692e(10); and

F) By using any business, company, or organization name other than the true name of the defendants' business or company in violation of 15 U.S.C. § 1692e(14).

WHEREFORE, plaintiffs pray that the court certify this as a class action and for a judgement against the defendants for the following:

a.  Enter declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that the practices of the defendants described above violate the FDCPA.

b.  Award Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B).

c.  Award actual damages to the plaintiffs and the class members.

d. Award costs and reasonable attorneys' fees pursuant to the FDCPA.

e. Enter such additional relief as the Court may find to be just and proper.

## CAUSE OF ACTION NO. 4

## VIOLATIONS OF Neb. Rev. Stat. § 87-302 et seq.

### Nebraska Deceptive Trade Practices Act

80.  The plaintiffs reassert all of the allegations stated above as if fully stated here.

81.  That the defendants' standard practices and activities described above violate the Nebraska Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302 in the following

particulars:

A. By using deceptive representations in connection with its goods and services, in violation of Neb. Rev. Stat. § 87-305(4).

B. By representing that goods or services have sponsorship, approval, characteristics / ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have in violation of Neb. Rev. Stat. § 87-302(5).

C. By participating in the unauthorized practice of law in the state of Nebraska.

WHEREFORE, plaintiffs pray that judgment be entered in their favor and in favor of the class they seek to represent against the defendants, as follows:

a. Preliminary and permanently enjoin the defendants from soliciting and selling its "debt negotiation services" program in the state of Nebraska.

b. The award of actual damages to the plaintiffs and the class members.

c. The award of costs and reasonable attorneys' fees pursuant to Neb. Rev. Stat. § 87-306 et seq.

d. Additional relief as the Court may find to be just and proper.

## CAUSE OF ACTION NO. 5

## VIOLATIONS OF Neb. Rev. Stat. § 59-1601 et seq.

### Nebraska Consumer Protection Act

82.  The plaintiffs reassert all of the allegations stated above as if fully stated here.

83.  The defendants are "persons" engaged in "Trade or Commerce" as those terms

are contemplated in the Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq.

84.  The defendants' standard practices of soliciting and providing the services set forth above constitute unfair and deceptive practices in violation of Neb. Rev. Stat. § 59-1602.

85. The defendants' unauthorized practice of law in the state of Nebraska constitutes unfair and deceptive practices in violation of Neb. Rev. Stat. §59-1602.

86.  The defendants' violations caused financial injury to the plaintiffs and the class and bringing this claim is in the public interest.

WHEREFORE, the plaintiffs pray that this court certify the class and enter judgment for the plaintiffs and the class:

a. For actual damages, including disgorgement and refund of the amounts paid by Nebraska residents.

b. Attorneys' fees and costs of this action.

c. Statutory damages.


d.  Injunctive and declaratory relief.

e. Such other and further relief as the court shall allow, pursuant to Neb. Rev. Stat. § 59-1609.


Dated this 11th day of March, 2009

Leland Mongold & LaDonna Mongold
Plaintiffs,

By: /s/ William L. Reinbrecht
Pamela A. Car, #18770
William L. Reinbrecht, #20138
Car & Reinbrecht, P.C., L.L.O.
8720 Frederick Street, Suite 105
Omaha, NE 68124
(402) 391-8484 Telephone
(402) 391-1103 Facsimile
Attorneys for the Plaintiffs
And the Putative Class

## JURY DEMAND

Plaintiffs demand trial by jury as to all issues so triable.

Leland Mongold & LaDonna Mongold,
Plaintiffs,

By: /s/ William L. Reinbrecht
Pamela A. Car, #18770
William L. Reinbrecht, #20138
Car & Reinbrecht, P.C., L.L.O.
8720 Frederick Street, Suite 105
Omaha, NE 68124
(402) 391-8484 Telephone
(402) 391-1103 Facsimile
Attorneys for the Plaintiffs
And the Putative Class

22